CLARKE (BOONE v.). See Case No. 1,641.

CLARKE (CASE v.). See Case No. 2,490.

## Case No. 2,845.

### CLARKE et al. v. CHASE et al.

[Brunner, Col. Cas. 638;[2] 21 Law Rep. 34.]

Circuit Court, D. Massachusetts, 1856.

REMOVAL OF CAUSE FROM STATE COURT—EFFECT ON ATTACHMENT—ATTACHMENT—EFFECT OF ASSIGNMENT ON.

1. On the removal of a cause, an attachment will have the same effect as if the cause had remained in the state court.

[1] [Reprinted by permission.]

[2] [Reported by Albert Brunner, Esq., and here reprinted by permission.]

2. Rights under an attachment depend on the state of the property when the attachment was levied, and cannot be affected by a transfer of the securities for the debt by the assignee under a void assignment.

This was a question whether the Manufacturers' Insurance Company were chargeable as the trustee of Franklin Chase. The plaintiffs [J. W. Clarke and others], being citizens of Massachusetts, brought an action against Chase, a citizen of the state of Rhode Island, in the supreme judicial court of the commonwealth of Massachusetts, and summoned the Manufacturers' Insurance Company as his trustee, under the trustee process provided by the law of that state. The defendant removed the suit to this court pursuant to the twelfth section of the judiciary act of 1789 (1 Stat. 79). It appeared from the disclosures of the trustee that on the 3d day of January, 1854, one Henry Parks procured a policy of insurance, to be underwritten by the Manufacturers' Insurance Company, on machinery and stock in a cotton mill; and in case of loss $2,500 of the amount insured was, by the policy, made payable to the defendant Chase. That before the service of the trustee process, a loss had occurred which made the sum of $2,500 due and payable, and that the trustee was ready to pay it to its rightful owner; but that the trustee was informed that one George W. Butts claims to be the owner of the said sum of money by assignment from the defendant Chase. Under provisions of the law of Massachusetts, Butts intervened, and made allegations, from which, being admitted to be true, it appeared that on the 6th day of January, 1854, before the service of the trustee process, Chase, being insolvent, conveyed to Butts, a citizen of the state of Rhode Island, by a voluntary assignment, all his property, including his rights under the policy of insurance above mentioned, in trust. to pay, first, certain preferred creditors, and secondly, to pay, pro rata, all such of his creditors as should release the assignor from their claims. That Chase was the creditor of Parks, who procured the policy, in the sum of $5,699.65, and the sum of $2,500 was made payable to Chase as security therefor. That after the assignment was made to Butts, this indebtedness of Parks was consolidated and liquidated, and Parks gave his promissory note for the amount, payable to Butts as assignee, and as security therefor executed a mortgage on real property. That Butts, after the service of the trustee process, assigned this note and mortgage, and the assignee afterwards acknowledged payment thereof on record; and afterwards Parks assigned to Butts all his right and interest in the said sum of $2,500; and that all these transactions took place within and between citizens of the state of Rhode Island.

Mr. Hillard, for plaintiffs.

Mr. Ball, contra.

CURTIS, Circuit Justice. The first question is, whether the title made by Chase to Butts, by the voluntary assignment for the benefit of creditors, can prevail over the attachment. It is admitted at the bar that it is settled law in the supreme court of Massachusetts, that the assignment could not prevail over the attachment. The cases of Ingraham v. Geyer, 13 Mass. 146, and Zipcey v. Thompson, 1 Gray, 243, and Edwards v. Mitchell, Id. 239, are decisive on this subject. And if the attachment was valid by the laws of Massachusetts, the express words of the twelfth section of the judiciary act, under which this suit was removed to this court, make that attachment equally valid here. Its language is: "And any attachment of the goods or estate of the defendant by the original process shall hold the goods or estate so attached, to answer to final judgment, in the same manner as by the laws of such state they would have been holden to answer the final judgment, had it been rendered by the court in which the suit commenced." I have been referred to the decision of Mr. Justice Grier, in Caskie v. Webster [Case No. 2,500]. But this is purely a question of the local law of Massachusetts, and that being settled, the judiciary act requires me to administer it precisely as it would have been administered in the supreme court of Massachusetts, if the suit had not been thence removed.

The next question is, whether the consolidation of the debt, as security for which the $2,500 was made payable to Chase, and the giving of a promissory note secured by a mortgage to Butts, the assignee, put an end to any attachable interest of Chase, the assignor. As respects any title acquired by Butts, as assignee, by means of this transaction, it is open to precisely the same objection as his original title under the deed of assignment; for it was but a mode of perfecting that same title. Nor can it be maintained that what was thus done amounted to a payment of the debt for which the $2,500 stood as security, and so released that security. It is not alleged that the new note was negotiable; and if it were, the taking of a negotiable note is not presumptive evidence of payment in Rhode Island; and there is no allegation that it was intended as a payment. The old evidences of debt were relinquished; but there was no reason for retaining them after the debts they evidenced had been consolidated, and new evidence of the liquidated sum given.

Neither can it be maintained that the discharge of the mortgage by the assignee after the service of the trustee process destroyed the attachment. The plaintiffs' title depends on the state of things existing when the attachment was made. Chase was the legal owner of this sum of money, which was absolutely due to him. If he had received it, so much of his claim against Parks would have been paid. In contemplation of law, as between him and Parks, Chase does receive it when it is appropriated by law to pay the debt due to the plaintiffs. And while the plaintiffs are seeking for this appropriation, and the money is sequestered, it would not be competent for Chase and Parks to defeat Chase's title. And what Chase and Parks cannot do to this effect, Butts, or his assignee, and Parks cannot do.

It inflicts no injury on Parks, and deprives him of no right to require him to consider the $2,500 in the hands of the insurance company as so much money already paid by him; and to hold that if he chooses to pay that sum to Chase or his representative, it is a voluntary payment so far as the rights of the plaintiffs are concerned. It is a voluntary payment; for while this process is pending Parks could not be compelled to pay; nor would he be allowed in any event to lose anything by force of this attachment. I hold the trustee chargeable.